UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONNIE BREWINGTON,
AKIRA J. WALKER,

                        Plaintiffs,              Civil Action No. 13-cv-10043
                                                    Honorable Robert H. Cleland
                                                     Magistrate Judge David R. Grand
     v.

NATIONSTAR MORTGAGE LLC,

                        Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT
## NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS [6]

**I.       RECOMMENDATION**

Before the Court is defendant Nationstar Mortgage LLC's ("Nationstar") Motion to Dismiss Plaintiffs Connie Brewington and Akira Walker's ("Plaintiffs") complaint [6], which has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 626(b)(1)(B). [11]. The court held oral argument on June 6, 2013. For the following reasons, the court RECOMMENDS GRANTING Nationstar's motion [6] and dismissing Plaintiffs' complaint.

**II.      REPORT**

      **A.       Background**

This case involves real property located at 9542 Chatham, Detroit, Michigan 48239 (the "Property"). (Cplt., ¶5). On April 4, 2001, Plaintiffs received a loan from ABN AMRO Mortgage Group ("ABN AMRO") in the amount of $80,800 ("Loan") to acquire the Property. (Cplt., ¶22). They executed a note ("Note") and, to secure repayment of the Loan, granted a

mortgage ("Mortgage") in the property to ABN AMRO, which was duly recorded on May 11, 2001.[1]  (Cplt., ¶12; Ex. 1).  Subsequently, ABN AMRO merged with CitiMortgage Inc. ("CitiMortgage").  (Cplt., ¶22).  On November 24, 2010, CitiMortgage assigned its interest in the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Nationstar by an Assignment of Mortgage, which was duly recorded on December 8, 2010. (Cplt., Ex. 2).  MERS assigned its interest to Nationstar on January 26, 2012.  (Cplt., Ex.3).

Plaintiffs allege that, "*Applying [] industry standards* to the transaction at issue, it appears that the Plaintiffs' note and mortgage have been securitized and are a part of a securitization trust," and that "It is now believed that the Plaintiffs' note *may* be located in the Pooling and Servicing Agreement, ("PSA"), associated with *a* New York trust."  (Cplt., ¶¶17, 24) (emphasis added).   Later in their complaint Plaintiffs seem to identify this trust as "Certificate Series 2002-S2", without identifying any of its particulars, such as affiliated banks or other security holders.  (Cplt., ¶ 60) (alleging that Nationstar acted "in the capacity of a Trustee for Certificate Series 2002-S2" when it foreclosed on the Property).  Plaintiffs allege that the assignment from CitiMortgage to MERS "was never assigned to the Trustee" by the closing date of the trust as required by "*a* PSA."  (Cplt., ¶¶25, 45) (emphasis added).  In later paragraphs, they name Nationstar as the trust's Trustee.  (Cplt., ¶¶56, 60).  Plaintiffs allege that the trust was governed by a PSA, and they recite language from an unidentified PSA, which outlines the requirements for assigning mortgages into its trust.  (Cplt., ¶¶25, 47).  They further allege that "[u]pon information and belief, Plaintiffs' note lacks the proper endorsements necessary to

---

[1] Plaintiffs attached the Mortgage to their complaint, making it part of the pleadings for purposes of the instant motion to dismiss.  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[d]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss.") (citing Fed.R.Civ.P. 10(c)); Fed R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

effectuate delivery into the trust," that "[t]here is no evidence on the promissory note of any endorsements from any necessary party to the trust; thus the needed endorsements do not exist," and that the "original note is absent of a complete chain of endorsements in violation of the PSA, Section 2.01(b)(i)."  (Cplt. ¶¶27, 46, 50).  The complaint further alleges that ABN AMRO and its successors "transferred the Note into the Trust without assigning the Mortgage to the Trust as well."  (Cplt., ¶37).

Plaintiffs defaulted on their Loan on December 1, 2011.  (Plf. Resp. at 3; Def. Brf. Exh. E).  On June 5, 2012, Nationstar commenced foreclosure by advertisement proceedings by publishing a notice of foreclosure in the Detroit Legal News.  (Def. Brf. Ex. F at 3).[2]  A sheriff's sale took place on July 5, 2012, with Nationstar purchasing the Note via credit bid.  (Cplt., ¶29; Def. Brf. Ex F. at 1).  The redemption period for Plaintiffs to redeem the Property expired six months later, on January 5, 2013.  (Def. Brf. Ex. F at 5; Plf. Brf. at 4).  *See infra* at 7.

The gravamen of Plaintiffs' complaint is that Nationstar foreclosed on their Property without proper standing, rendering the foreclosure invalid.   (Cplt., ¶30).   To reach that conclusion, Plaintiffs first claim that there exists a hole in the chain of title due to the purported failure of "ABN AMRO and its successors" to place the Mortgage and the Note together into an unidentified trust within the timeframe governed by that trust's PSA.  (Cplt. ¶30).  Plaintiffs assert that, as a result, all subsequent assignments of that Mortgage, including the one from MERS to Nationstar, were void.  (*Id.*).  Plaintiffs assert five causes of action based on these allegations: breach of contract; lack of standing to foreclose; quiet title; violations of the Fair

---

[2] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).  Because the foreclosure by advertisement in this case is in the public record, the court may take note of the date.

Debt Collection Practices Act, 15 U.S.C. §1692 et seq. (the "FDCPA"); and negligence.

Nationstar filed a timely motion to dismiss Plaintiffs' complaint. [6]. Its principal argument is that Plaintiffs lack standing to challenge the foreclosure because they failed to redeem the Property within the statutory period, and because they do not allege any fraud or irregularity in the foreclosure procedure. Nationstar also asserts separate arguments for the dismissal of certain of Plaintiffs' claims.

### B.      Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94

4

(2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements.  *Iqbal*, 129 S.Ct. at 1949.  *See also*, *Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009).  Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949.

   **C.     Analysis**

   Nationstar argues that Plaintiffs lack standing to challenge the foreclosure because they failed to redeem the Property within the statutory period, and because they do not allege any fraud or irregularity in the foreclosure procedure.  Resolution of that argument in its favor, Nationstar claims, results in the dismissal of Plaintiffs' entire complaint.  (Def. Brf. at 12 ("Plaintiffs' Complaint should be dismissed because Plaintiffs failed to redeem…"); *id.* at 15 ("All of Plaintiffs' Claims Fail Because Plaintiffs Lack Standing…")).  While the Court, for reasons discussed below, agrees that Plaintiffs cannot, as a matter of law, successfully challenge the completed foreclosure, it is not because they lack "standing" to do so, but because their allegations fail to state a claim for relief under the applicable Michigan law.  *See infra,* n. 4. Moreover, the Court disagrees that this conclusion necessarily dooms each and every one of their claims.  Rather, Nationstar's principal argument applies only to Plaintiffs' Standing to Foreclose

(Count II), Quite Title (Count III) and (at least in part) Negligence (Count V)[3] claims.
Accordingly, the Court will first address Nationstar's principal argument as it relates to those
claims. It will then address Nationstar's arguments as to the remaining counts in Plaintiffs'
complaint.

     1.  *Counts II (Standing to Foreclose), III (Quiet Title), and V (Negligence)*

  Counts II (Standing to Foreclose), III (Quite Title), and V (Negligence) of Plaintiffs'
complaint all relate to their allegations that Nationstar, due to a purportedly defective chain of
title, had no standing to foreclose on the Property after Plaintiffs defaulted. Nationstar argues
that it is the Plaintiffs who now lack "standing" to challenge the sheriff's sale of their Property
because they failed to redeem the Property prior to the expiration of the statutory redemption
period. Plaintiffs counter that since they filed the instant action on the last day for redemption,
the redemption period was automatically tolled for purposes of their challenge to the foreclosure.
In the alternative, Plaintiffs argue that the facts alleged in their complaint evidence fraud or
irregularity in the foreclosure procedure, which enables them to challenge the sale despite being
outside the statutory redemption period. Both of Plaintiffs' arguments fail.

  Non-judicial foreclosures, or foreclosures by advertisement, are governed by Michigan
statutory law. *See* Mich. Comp. Laws § 600.3204; *Senters v. Ottawa Sav. Bank, FSB*, 503
N.W.2d 639, 641 (Mich. 1993). The statute not only governs the process for foreclosure, but
also the parties' rights subsequent to the sale of the property. *Senters*, 503 N.W.2d at 641. A
mortgagor is given six months after the date of the sheriff's sale to redeem his property. Mich.
Comp. Laws § 600.3240(8). After that point, the mortgagor's "right, title, and interest in and to

---

[3] Although Plaintiffs allege that "Nationstar negligently handled, serviced…Defendants' loan
and mortgage," their negligence claim clearly relates principally to the underlying allegation that
due to a purportedly defective chain of title, Nationstar had no authority to service the Loan or to
foreclose on the Property. (Cplt. ¶¶79-80).

the property" are extinguished. *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942); *see also* Mich. Comp. Laws § 600.3236. Michigan courts have held that once the redemption period has expired, the only way a property owner may challenge a foreclosure sale is by making "a clear showing of fraud, or irregularity." *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969). Furthermore, such fraud or irregularity "must relate to the foreclosure procedure itself." *El-Seblani v. Indymac Mortg. Servs.*, No. 12-1046, 2013 U.S. App. LEXIS 635, \*10 (6th Cir., Jan. 7, 2013). As the Sixth Circuit has recently stated, "[w]hether the failure to make this showing is best classified as a standing issue[4] or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period." *Conlin v. Mortgage Elec. Registration Sys.*, 714 F.3d 355, 359-60 (6th Cir. 2013).

### a.     *Tolling of the Redemption Period*

Plaintiffs first argue that they satisfy this standard because they filed their complaint on January 5, 2013, the last day of the redemption period. They argue that filing the complaint tolled the redemption period, such that they may properly challenge the foreclosure sale even in the absence of any fraud or irregularity in the foreclosure procedure. Plaintiffs are mistaken.

---

[4] In a number of recent, although unpublished cases, the Sixth Circuit has found that a mortgagor's ability to challenge a foreclosure sale after the expiration of the redemption period is not a "standing" issue *per se*. *See, e.g., El-Seblani*, 2013 U.S. App. LEXIS 635; *Houston v. U.S. Bank Home Mortg. Wisc. Servicing*, No. 11-2444, 2012 U.S. App. LEXIS 24196 (6th Cir. Nov. 20, 2012); *Munaco v. Bank of Am.*, No. 12-1325, 2013 U.S. App. LEXIS 2322, \*6 n.2 (6th Cir. Jan. 31, 2013). *See also Pettey v. CitiMortgage, Inc.*, 2012 WL 3600342, at \*4-5 (E.D. Mich., Aug. 21, 2012) (finding "no legal merit" to the argument that a mortgagor who loses his legal interest in a property because the redemption period has expired has no "standing" to bring an Article III challenge to pursue an interest in the foreclosed property). Accordingly, the question here is not whether Plaintiffs have "standing" to challenge the foreclosure sale, but rather whether the factual allegations contained in their complaint are sufficient "to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale." *El-Seblani*, 2013 U.S. App. LEXIS 635 at \*12.

Michigan law is clear that the mere filing of a lawsuit does not toll the statutory redemption period. *Overton*, 2009 Mich. App. LEXIS 1209 at *3-4 ("The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity") *quoting Schulthies*, 16 Mich. App. at 247-48; *Galliard v. USAA Fed. Sav. Bank*, No. 12-11459, 2012 U.S. Dist. LEXIS 163211, *29 (E.D. Mich. Nov. 15, 2012) ("[T]he filing of a suit does not in and of itself toll the statutory redemption period[.]") (citing *Overton*). Therefore, Plaintiffs can challenge the foreclosure sale only if they can make a clear showing of fraud or irregularity in "the foreclosure procedure itself." *El-Seblani,* 2013 U.S. App. LEXIS 635, at *10.

### b.    Showing of Fraud or Irregularity

Plaintiffs argue that they have made the requisite showing of fraud or irregularity by alleging that the Note was not assigned to the trust prior to the trust's closing date, in accordance with the trust's PSA, and that their Note and Mortgage were "split" in violation of those documents' terms. These arguments fail for numerous reasons.

### i.    No Allegation of Fraud/Irregularity in the Foreclosure Procedure

First, even if Plaintiffs' allegations were properly supported factually (which, as discussed below, they are not), they would not establish a fraud or irregularity in the "foreclosure procedure itself," as is required. *El-Seblani*, 2013 U.S. App. LEXIS 635, *10. *See also Conlin*, 714 F.3d at 359-60. The alleged wrongful conduct here came well before the foreclosure proceedings began. The alleged improper assignment is only tangentially related, at best, to the foreclosure proceedings, which occurred only because Plaintiffs stopped making their required mortgage payments.

8

This was the precise holding in the analogous and very recent *Conlin* case.  In *Conlin*, the plaintiff mortgagor (Conlin) took out a loan from, and granted a mortgage to, a particular bank. The bank later transferred the mortgage to MERS, which, at yet a later date, transferred it to U.S. Bank.  When Conlin defaulted on the mortgage, U.S. Bank foreclosed on his property.  Conlin did not timely redeem the property, and instead filed a civil action in which he argued that the foreclosure was void.  Conlin argued that the assignment to U.S. Bank was invalid because it was "robo-signed" and because MERS lacked the capacity to make the assignment.  Because the allegedly improper assignment to U.S. Bank had nothing to do with the actual "foreclosure procedure," the Sixth Circuit held that Conlin "failed to make the clear showing of fraud in the foreclosure process required to challenge the foreclosure after the expiration of the six-month redemption period."  *Id.* at 362.  *See also Pace v. Bank of America*, N.A., 2012 WL 5929931, at *2 (E.D. Mich., Nov. 27, 2012) ("Plaintiffs do not allege fraud in connection with the foreclosure sale.  Rather, they contend that Bank of America is not the owner of the indebtedness and thus did not have the power to conduct the foreclosure sale.  This argument has been repeatedly rejected by Michigan state and federal courts.) (citations omitted).

Similarly here, Plaintiffs do not raise an issue with the foreclosure procedure itself, but rather with the chain of assignments leading to Nationstar's title.  For this reason alone, Plaintiffs fail to meet the "high standard" of showing clear fraud or irregularity in Nationstar's foreclosure proceedings, and Counts II (Lack of Standing), III (Quiet Title) and V (Negligence) (to the extent such claim is based the allegation that a defective chain of title deprived Nationstar of the authority to service the Loan or to foreclose on the Property) of their complaint should be dismissed.

       *ii.*     *Plaintiffs' Allegations Fail the "Facial Plausibility" Test*

Plaintiffs' claims based on the alleged chain of title defect are also ripe for dismissal because they do not satisfy the "facial plausibility" standard described above. *Supra* at 4-5. Again, Plaintiffs' claims appear to be based on speculation that unrecorded assignments of their Mortgage or Note took place between the recorded assignments attached as exhibits to their complaint. At least one of these supposed unrecorded assignments was to a trust, though Plaintiffs admit that they cannot identify said trust, or even allege with certainty its existence. In their complaint they allege that it may have been a trust set up in New York, and thus governed by New York trust law. (Cplt., ¶18). However, at oral argument they backed away even from that claim, arguing that the bulk of these trusts are set up under *either* New York or Delaware law, and thus one of those two bodies of law would likely apply here. Plaintiffs then allege, again on nothing more than speculation, that the assignment to this unidentified trust occurred at some point, and, although they cannot say when, they speculate that it occurred after the alleged trust's closing date as specified in its PSA.

These allegations lack the requisite factual specificity to state a plausible claim for relief. As discussed above, while the pleading standard of Fed. R. Civ. P. 8 is a somewhat lenient one, a plaintiff must do more than assert purely speculative facts which *may* give rise to a claim for relief. Rather, a complaint must contain sufficient factual matter, which, if accepted as true, will "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The focus is on whether the complaint contains "***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." . *Iqbal*, 556 U.S. 678 (emphasis added). *See also supra* at 4-5. Here, Plaintiffs have failed to meet this threshold.

Plaintiffs' complaint fails to allege any facts supporting their allegation that their Note

10

was assigned to a trust.   The complaint alleges, "*Applying [] industry standards* to the transaction at issue, *it appears* that the Plaintiffs' note and mortgage have been securitized and are a part of a securitization trust," and "It is now believed that the Plaintiffs' note *may* be located in the Pooling and Servicing Agreement, ("PSA"), associated with a New York trust." (Cplt., ¶17, 24) (emphasis added).   These assertions are, on their face, speculative.   The complaint does not identify the alleged trust beyond identifying it as "Certificate Series 2002-S2".   Nor does it identify the information on which Plaintiffs rely to support these allegations. They allege that the assignment from CitiMortgage to MERS "was never assigned to the Trustee" by the closing date of the trust as required by "*a* PSA" of this alleged, but otherwise unidentified, trust.   (Cplt., ¶¶25, 45) (emphasis added).   They then recite language from some unidentified PSA outlining its requirements for assigning a mortgage into its trust, but importantly, they do not allege that that particular PSA governs the unidentified trust to which they allege their Note was assigned.   (Cplt., ¶¶25, 47).   Furthermore, while Plaintiffs allege that their Note was not assigned to the trust prior to the trust's closing date, they fail to allege what that date supposedly was, or how they know their Note was not deposited prior to that date. (Cplt., ¶52).   Plaintiffs allege that, "[p]ursuant to the terms of the PSA, the Plaintiffs' Loan was never lawfully transferred into the trust," again not identifying the specific trust at issue nor claiming that the PSA rules they cite actually governed the alleged trust.   (Cplt., ¶¶28, 45-48). They further allege that ABN AMRO and its successors "transferred the Note into the Trust without assigning the Mortgage to the Trust as well."   (Cplt., ¶37).

Plaintiffs' allegations are lacking in any factual support, and indeed, are belied by the relevant documents appended to their complaint which show a clear chain of title among the assignees:   a December 8, 2010 assignment from CitiMortgage (who merged with Plaintiffs'

11

original lender ABN AMRO)[5] to MERS, and a later assignment, from MERS to Nationstar on February 9, 2012.  (Cplt., Exhs. 2, 3).  In neither assignment was any party designated as a "trustee," which belies Plaintiffs' allegation that "Nationstar as Trustee cannot enforce the note." (*Id.*; Cplt., ¶53).

While the Court must accept as true Plaintiffs' well-pleaded factual allegations at this stage, that principle does not apply to allegations which are based wholly on speculation.  *See supra* at 4-5.  Accordingly, Plaintiffs' unsupported and speculative supposition that certain "industry standards" *may* have been applied to their Mortgage and Note, and that some unspecified assignment of their Note *may* have taken place, at an unspecified time, into an unidentified trust, lacks the requisite "factual content" to satisfy *Iqbal's* "facial plausibility" standard with respect to their claim that Nationstar lacked standing to foreclose upon their Property.  *Iqbal*, 556 U.S. at 678.

Plaintiffs' pleading problems are not ones that can be cured by amendment.  First, even if the alleged unidentified trust was involved, and even if it could be shown that Plaintiffs' Note was not deposited into that trust by the closing date outlined in the applicable PSA, this does not necessarily give Plaintiffs the right to challenge it.  As the Sixth Circuit has found, a plaintiff is not generally permitted to challenge an assignment to which it is neither a party nor a third-party

---

[5] Although Plaintiffs do not argue it, the Court notes that the transfer of the Note from ABN AMRO to CitiMortgage at the time of the merger is not an assignment that requires recording in order to preserve a clear chain of title.  *See Gregory*, 890 F. Supp. 2d at 799-800 ("[W]here a mortgage is transferred through merger, there is no need to record the assignment in order for the surviving entity to have authority to foreclose, because the surviving entity has 'stepped into the shoes' of the entity that held the mortgage before the merger.") *citing Sesi v. Federal Home Loan Mortg. Corp.*, No. 12-10608, 2012 U.S. Dist. LEXIS 24348, *17 (E.D. Mich. Feb. 27, 2012) ("Mich. Comp. Laws § 600.3204(3) applies to 'assignments.' . . . Because CitiMortgage stepped into the shoes of ABN AMRO without necessity of assignment, no recording of the mortgage interest was required and CitiMortgage had the right to initiate foreclosure under Mich. Comp. Laws § 600.3204.").

beneficiary.  *See Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 Fed Appx. 97 (6th Cir. 2010) (holding that, absent certain exceptions, third parties cannot challenge an assignment to which they were not a party nor a third-party beneficiary). The exceptions noted in *Livonia Properties* do not apply in this case, as Plaintiffs have not alleged that they are under the threat of being required to pay their debt to two competing entities.  *See Wiggins v. Argent Mortg. Co., LLC*, No. 11-15118, 2013 U.S. Dist. LEXIS 68041, *17-19 (E.D. Mich. May 14, 2013) (rejecting plaintiff's ability to challenge the assignments were he "alleges no facts that indicate that the assignment may in some way subject Plaintiff to double liability.").[6]  Therefore, Plaintiffs cannot challenge any alleged improper assignment to the alleged trust.

Second, even if Plaintiffs could challenge the assignment, and even if the alleged deposit of Plaintiffs' Note failed to comport with the deadline set forth by the alleged PSA, this does not necessarily mean the assignment is void *ab initio*.  In support of their contrary argument, Plaintiffs rely on a Washtenaw County Circuit Court case, *Hendricks v. U.S. Bank Nat'l Assn.*, No. 10-849-CH (Wash. Cnty. Cir. Ct., June 6, 2011).  In that case, the PSA of a trust was allegedly violated when the note failed to include endorsements form the originator to the depositor, such that the trust could not have validly received the note.  The trial court found that, as a result, the recording of the assignment that occurred after the closing date of the trust did not convey anything because there was no evidence that the chain of endorsements and assignments

---

[6]  Although Plaintiffs, in their response to the motion to dismiss, assert a theoretical and speculative possibility of double obligations (Pl. Brf. at 13), they allege no facts to support that assertion.  *See JAT, Inc. v. Nat'l City Bank of the Midwest*, 460 F. Supp. 2d 812, 818 (E.D. Mich. 2006) (plaintiffs' additional allegations in a response to a motion to dismiss may be considered an implicit amendment to amend a complaint, but only where it is adding to already existing claims and where "all of the relevant facts had previously been pled.") (*quoting Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 740 (6th Cir. 1999)).  Such allegations are insufficient, as a matter of law, to state a claim for relief.  *Bredesen*, 500 F.3d at 527.

of the Mortgage and note occurred pursuant to the terms of the PSA and New York trust law.

However, as one court in this district aptly stated in discussing the *Hendricks* opinion:

> That opinion, although intuitively appealing, is unpersuasive on the issue of whether the mortgage assignment in this case actually was void under New York law. It assumes that a failure to comply with the terms of the PSA renders a conveyance to the trust void, but it does not provide any analysis as to why that would be so. Nor is the point so obvious that analysis is unnecessary, especially if the events are analogized to a more pedestrian breach of contract claim. If D contracts with Acme to purchase widgets from Acme exclusively, but then purchases widgets from Beta, that would be a breach of contract, but it would not render D's widget purchase from Beta void. It may be that New York trust law changes that analysis, but the plaintiff has not shown that to be the case…Although the *Hendricks* opinion references New York trust law, it cites no particular statutory provision that was violated and does not explain how "New York trust law" was violated.

*Moss v. Wells Fargo Bank, N.A.*, No. 11-13429, 2013 U.S. Dist. LEXIS 38332, *19-20 (E.D. Mich. Jan. 22, 2013) (on reconsideration). Here, just as in *Moss*, "the record chain of title to the property demonstrated that defendant[ ] had authority to foreclose under *Michigan Compiled Laws § 600.3204(3)* and the plaintiff has not shown that the defendant did not actually own the mortgage." *Id.* at *22. Indeed, Plaintiffs do not even argue that Nationstar was not the owner of the indebtedness at the time of their foreclosure, as required by Mich. Comp. Laws § 600.3204(1)(d), they simply argue that Nationstar had no legal standing to sue "as the trustee" of the alleged trust, due to the purported failed deposit of the Note in to the trust. (Cplt., ¶55-56). Not only is this is a legal conclusion that the Court is not required to accept on a motion to dismiss, *see Iqbal*, 129 S.Ct. at 1949, but Plaintiffs' own exhibits show that Nationstar's assignment was not that of "trustee" (like the bank in *Hendricks*) but of title owner of the debt. (Cplt. Exh. 3).

The uncontroverted evidence shows that Nationstar was assigned Plaintiffs' Mortgage on February 9, 2012, almost four months prior to the date it instituted foreclosure proceedings on

14

June 5, 2012.  As shown below, *infra* at 18-20, Nationstar was servicing the Loan long before that.  And, in accordance with Mich. Comp. Laws. § 600.3204(3), a complete record chain of title exists showing that Nationstar was assigned the Mortgage well before the date of sale of the property, making it a proper foreclosing party.  (Cplt., Ex. 2, 3).  Accordingly, Plaintiffs' claims that are based on an alleged improper assignment must fail.

For all of these reasons, Counts II (Lack of Standing as to Nationstar), III (Quiet Title) and V (Negligence) (to the extent such claim is based the allegation that a defective chain of title deprived Nationstar of the authority to service the Loan or to foreclose on the Property) of Plaintiffs' complaint should be dismissed.

The Court now turns to Nationstar's separate arguments that Plaintiffs' claims for breach of contract (Count I) violation of the FDCPA (Count IV) and the remaining basis for negligence (Count V) should be dismissed.

### 2.     *Count I (Breach of Contract)*

Plaintiffs' breach of contract claim fails to withstand scrutiny.  The elements of a breach of contract claim are: "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller–Davis Co v. Ahrens Const., Inc.*, 296 Mich. App. 56, 71 (2012).  Plaintiffs allege that "ABN AMRO, and/or its successors, breached its duty to Plaintiffs under the Mortgage Contract when it transferred the Note into the Trust without assigning the Mortgage to the Trust as well." (Cplt., ¶37).  Similarly, they allege that "ABN AMRO, and/or its successors, breached its duty to Plaintiffs under the Mortgage Contract when it assigned the Mortgage to [MERS] without transferring the Note to MERS as well."  (Cplt., ¶38).  In support, Plaintiffs allege that "Paragraph 20 [of the Note] states that the Note or partial interest n [sic] the Note can ***only*** be

15

sold 'together with the Mortgage.'" (Cplt., ¶20) (emphasis added). The relevant portion of Paragraph 20 actually provides: "[t]he Note or partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Cplt., Ex.1 ¶20).

Courts in the Eastern District of Michigan have disagreed as to whether this provision supports Plaintiffs' position. For instance, in *Keyes v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 440191, at *9 (E.D. Mich. Feb. 5, 2013), the court held that the identical provision "could be read to suggest that the note can only be sold without prior notice [ ] when it is transferred 'together' with the mortgage," such that the transfer of the note without the mortgage and without giving prior notice to the mortgagor would violate that provision of the contract. On the other hand, in *Cable v. Mortgage Electronic Registration Sys., Inc.*, 2012 WL 2374236, at *5 (E.D. Mich., Jun. 22, 2012), and (E.D. Mich., Jan. 11, 2013), and *Nelson v. BAC Home Loans Servicing, L.L.P.*, 2012 WL 2064383, at *4 (E.D. Mich., Jun. 7, 2012), the courts reached the opposite conclusion, holding that no such meaning can be ascribed to the provision.

The Court need not delve into the contractual interpretation exercise urged by the Plaintiffs. Whereas in *Gregory*, the plaintiffs sufficiently pleaded that their note had been transferred to a trust, here, for the reasons discussed above, Plaintiffs failed to plead, above the speculative level, a cognizable claim that their Note was even transferred to a trust. *Supra* at 10-15. Therefore, Plaintiffs have not sufficiently pleaded a breach of this contractual provision. *See Keyes*, 2013 U.S. Dist. LEXIS 15279 at*28 (similarly finding that plaintiffs failed to allege facts showing the splitting of their note and mortgage). Thus, Plaintiffs' breach of contract claim should be dismissed.[7]

---

[7] Plaintiffs' breach of contract claim also fails because they cannot show that they suffered any

16

3.      *Count IV (FDCPA)*

Plaintiffs allege that Nationstar violated the FDCPA as a debt collector (as defined by that Act) that "failed to make all required disclosures to Plaintiffs in violation of the FDCPA." (Cplt. ¶ 72). They further allege that Nationstar made "misrepresentations . . . regarding the character, amount, or legal status of the debt," and that "[t]he amount of the debt, the amount of fees and charges, were incorrect and not supported by the law and by the note or mortgage." (Cplt. ¶¶73-74). Finally, Plaintiffs allege that "[t]he foreclosure was illegal and constituted a threat to take action which Nationstar was not legally entitled to take." (Cplt. ¶75).

Plaintiffs' claims fail to satisfy the liberal pleading requirements of Rule 8. "Bare assertions, such as those that amount to nothing more than a formulaic recitation of the elements of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded." *Evangelist v. Green Tree Servicing, LLC*, No. 12-15687, 2013 U.S. Dist. LEXIS 76875, *18 (E.D. Mich. May 31, 2013) *citing Iqbal*, 556 U.S. at 681 (internal quotations and citations omitted). Here, Plaintiffs' FDCPA claim rests on nothing more than such bare formulaic assertions. For example, Plaintiffs allege that Nationstar made misrepresentations, but they fail to state what those misrepresentations were or when they were made. They allege that the amount of the debt was incorrect, but fail to allege the supposed correct amount of the debt and how they calculate that figure. For these reasons, Plaintiffs' FDCPA claim should be dismissed. *See Cheesewright v. Bank of Am., N.A.*, No. 11-15631, 2013 U.S. Dist. LEXIS 23672, *14 (E.D. Mich. Feb. 21, 2013) ("Conspicuously absent from the

cognizable damages. Plaintiffs assert that the purported "note-splitting" clouded title to their Property and led to the collection of illegal mortgage payments and ultimately, the foreclosure of their Property. (Cplt., ¶39). They make clear in their response brief, however, that all of these "damages" flow from the supposed impropriety with the assignment to the unidentified trust. (Pl. Brf. at 10). As discussed above, however, Plaintiffs failed to adequately plead any such impropriety. Therefore, they could not have suffered any cognizable damages as a result.

Complaint are any details regarding how Defendant supposedly violated this statute."); *Brown v. Steel Capital Steel, LLC*, No. 12-12234, 2013 U.S. Dist. LEXIS 28762, *17-18 (E.D. Mich. Jan. 22, 2013) ("[P]laintiff merely alleges the statutory causes of action; she does not allege any facts which show that any provision of the FDCPA was violated by defendants. This is insufficient to state a claim.").

Moreover, even if Plaintiffs pleaded sufficient facts to otherwise support a claim under the FDCPA, this claim would still fail because Nationstar is not a debt collector under the FDCPA's definition of that term. The FDCPA excludes from the definition of "debt collector" any "person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). The Sixth Circuit held that this exception applies to mortgage servicers who serviced the mortgage prior to the date of default, regardless of whether they own the debt obligation they service. *See e.g. Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013) (servicer need not also be owner of debt to be exempt from definition of debt collector under the FDCPA so long as it serviced the loan prior to the date of default). Plaintiffs' complaint alleges that Nationstar "claims the debt was in default at the time the servicing rights were assigned or transferred to Nationstarr [sic] on or about January 26, 2012." (Cplt., ¶70). Nationstar counters that it was actually the servicer of Plaintiffs' Loan long before they defaulted. In support of its position, Nationstar attaches to its motion a copy of a Welcome Letter, sent to Plaintiffs, showing that Nationstar acquired servicing rights of their Loan on November 1, 2010. (Def. Brf. Exh. B) ("Welcome Letter"). It further attaches a March 21, 2012 letter stating that Plaintiffs defaulted on the Loan on December 1, 2011. (Def. Brf. Exh. E) ("Default Letter"). Plaintiffs do not dispute the authenticity of these

documents, nor do they argue that the Court should not consider them at the motion to dismiss stage. Rather, they simply ignore the documents and continue to argue that Nationstar acquired servicing rights at the time it was assigned the Mortgage in January 2012. Further, Plaintiffs concede in their response brief that they defaulted on their Loan on December 1, 2011, exactly as indicated in Nationstar's Default Letter. (*Cf.* Plf. Brf. at 3, 10 with Def. Brf. Exh. E).

As discussed above, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010). This applies also "when a document is referred to in the pleadings and is integral to the claims." *Commercial Money Ctr.*, 508 F.3d at 335-36. Further, where the plaintiff does not refer directly to given documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be incorporated without converting the motion to dismiss to one for summary judgment even though the complaint referred only to the "plan" and not the accompanying documents). That is the case here with respect to Nationstar's Welcome Letter and Default Letter.

While Plaintiffs' complaint does not refer specifically to these Letters, which indicate the date Nationstar began servicing their Loan and the date that Loan went into default, their complaint alleges that Nationstar was a debt collector as defined by the FDCPA because it began servicing their Loan *subsequent* to their default, and cites the assignment of the Mortgage as

support for this allegation.  The Court finds that because: (1) the subject matter of the of the Welcome Letter and the Default Letter is central to Plaintiffs' claims; (2) Plaintiffs referred to that subject matter in their complaint and conceded the date of their default in their response brief; and (3) Plaintiffs failed to make any challenge whatsoever to the authenticity of the Letters or their content in response to Nationstar's motion, this Court may consider those Letters at the motion to dismiss stage.  *See Weiner,* at 89.  *See also Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) ("'While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'  *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir.2012) [] ... *See Knowlton v. Shaw*, 708 F.Supp.2d 69, 75 (D.Me. 2010) ('[I]f the parties do not dispute a central document, a court may consider it in ruling on a motion to dismiss…'")).

Since the Welcome Letter and Default Letter show that Nationstar began servicing the Loan on November 1, 2010, well prior to Plaintiffs' default on December 1, 2011, Nationstar cannot be considered a "debt collector" for purposes of Plaintiffs' FDCPA claim.  15 U.S.C. § 1692a(6)(F).  For these reasons, Plaintiffs' FDCPA claim should be dismissed.[8]

### 4.    *Count V (Negligence)*

Finally, Plaintiffs allege that Nationstar "negligently handled, serviced, and processed payments, charges, fees, expenses and other aspects of Defendants'[sic] loan and mortgage, including the loan modification process."  (Cplt. ¶ 79).  They allege that Nationstar negligently

---

[8] Even if the Court cannot consider Nationstar's Welcome Letter and Default Letter at the motion to dismiss stage, its overall recommendation would not change.  Nationstar's motion, as it relates to this claim, would be converted to one for summary judgment, and, as noted above, Plaintiffs do not challenge the Welcome Letter's or the Default Letter's authenticity, or argue that they require additional time to conduct discovery regarding these documents' import.

conducted a foreclosure sale on the Property and attempted to eject Plaintiffs' from it.[9]  (*Id.* ¶ 80).

To state a negligence claim, a plaintiff must allege four elements: duty, breach, causation, and damages.  *Lelito v. Monroe*, 273 Mich. App. 416, 418-19 (2006).  Nationstar argues that Plaintiffs have not alleged a prima facie case of negligence in that they have failed to plead either a cognizable duty owed to them or damages.  "The Michigan Supreme Court has held that in 'tort actions based on a contract,'" such as the case here, "courts should use a 'separate and distinct mode of analysis.'"  *Galati v. Wells Fargo Bank*, N.A., No. 11-11487, 2011 U.S. Dist. LEXIS 126124, *21-22 (E.D. Mich. Nov. 1, 2011) *quoting Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 467 (2004).  Under this analysis, "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.  If no independent duty exists, no tort action based on a contract will lie."  *Id.*; *see also Ulrich v. Fed'l Land Bank of St. Paul*, 192 Mich. App. 194, 198 (1991) ("It has often been stated that the sometimes hazy distinction between contract and tort actions is made by applying the following rule: if a relation exists that would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise it will not.") (citations omitted).  Here, the "duty" Plaintiffs allege was owed to them stems exclusively from the terms of their mortgage-related documents.  (Cplt., ¶¶ 78-82).

Plaintiffs' attempt to distinguish their claims from ones where no independent contractual duty was found to exist is confusing at best.  They argue, "[in *Fultz,* the] defendant owed no contractual duty to a third party injured by negligence of the contractor, in this case, however,

---

[9] To the extent Plaintiffs' negligence claim rests on an allegation that Nationstar lacked standing to foreclose on the Property due to a defect with the various assignments, this Court has already recommended dismissing that claim.

[Plaintiffs are] not asserting an injury to due to the negligence of some third party.  Rather Plaintiffs' injury is a direct result of negligent actions taken by Defendants that were beyond the scope of the contract."  (Plf. Brf. at 20).  They specifically argue that the failure to properly complete the transfer of the Mortgage into the trust rendered Nationstar's "handling servicing, collecting payments, charging fees and other expenses [ ] negligent."  (*Id.* at 21).

Plaintiffs' argument misses the mark.  Throughout their complaint, they repeatedly claim that Nationstar, through the Mortgage and/or the alleged PSA, owed (and breached) certain obligations to them.  (Cplt. ¶¶36-38, 53-54, 64).  They are now simply characterizing the exact same allegedly wrongful conduct as "negligence."  (*e.g.*, Cplt. ¶¶79-80; (Pl. Brf. at 20) ("In failing to place the Loan with complete chain of title of endorsements in the trust by the time of the trust closing, this duty [i.e., to act "in accordance with the Pooling and Servicing Agreement…"] was violated.")).  This is precisely what the above law does not allow.  *Galati*, 2011 U.S. Dist. LEXIS 126124, at *21-22.  Furthermore, as outlined above, Plaintiffs have not pled any cognizable damage suffered as a result of this action.  *See supra* n. 7.  Accordingly, Plaintiffs' negligence claim should be dismissed.

## III.    CONCLUSION

For foregoing reasons, the court **RECOMMENDS** that Nationstar's Motion to Dismiss **[6]** be **GRANTED**, and that Plaintiffs' complaint be **DISMISSED**.


Dated: July 1, 2013                                   s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                                              United States Magistrate Judge

22

## NOTICE REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/T. Bankston for Felicia M. Moses
FELICIA M. MOSES
Case Manager

Dated:  July 1, 2013

23